*567 OPINION OF THE COURT
Albert J. Emanuelli, S.
Corporate Trustee Commissions — SCPA 2312
In consolidated contested proceedings to settle the final accounts of two testamentary trusts (Trusts) created under article seven of the will of Harry I. Prankard, 2nd (decedent), a hearing was held upon remand from the Appellate Division, Second Department, with respect to the application of petitioner Morgan Guaranty Trust Company of New York, the surviving trustee of said Trusts (petitioner), for an award of “reasonable compensation” for its fiduciary commissions, pursuant to SCPA 2312.[1]
Contentions
Petitioner contends that it is entitled to “reasonable compensation” under SCPA 2312 in the amounts it collected from the Trusts over the accounting period in question, based solely upon its published commissions rates within its competitive “marketplace,” without regard for 12 additional factors this court previously applied in Matter of McDonald (138 Misc 2d 577 [1988, Brewster, S.] [McDonald — I]) in assessing whether it is entitled to commissions above that normally charged by an individual trustee.[2]
Objectants, the executors of the estate of Dorothy Prankard (Dorothy), decedent’s now-deceased surviving spouse, contend that petitioner’s entitlement to “reasonable compensation” under SCPA 2312 should not be determined strictly upon petitioner’s published rates, and, instead, should be determined only after the court’s assessment of all factors set forth in Matter of McDonald (supra), which were specifically derived from the legislative history underlying the passage of SCPA 2312.
*568 Background[3]
Decedent’s Estate and Trusts “A” and “B”
Decedent died testate in July 1964, leaving a will and a codicil, both of which were admitted to probate in August 1964.
Pursuant to article one of the will, petitioner and John L. Gray, the will’s draftsman, were named coexecutors and co-trustees, with a provision that if Gray were to “cease for any reason to act” in either fiduciary capacity, petitioner was to act alone as executor and/or trustee. Gray served with petitioner as coexecutor and cotrustee until his death in 1982.
Also, article first of the codicil provides for the compensation of petitioner as a fiduciary pursuant to “the laws of the State of New York from time to time in effect.”
Under article seven of his will, decedent established the two Trusts in question to distribute his residuary estate, to wit: (i) Trust A, comprised of two thirds of his residuary estate, of which Dorothy was the sole beneficiary, and (ii) Trust B, comprised of the remaining one third of the residuary estate, of which decedent’s sister Ethel Mae Brown was primary beneficiary.
Upon Ethel’s death in May 1989, Dorothy became the sole income beneficiary of both Trusts, until her death in June 1993.
The Accountings
In the underlying accounting proceedings, which cover the period from November 1984 through October 15, 1993, petitioner has sought, inter alia, judicial settlement of its accounts regarding Trust A and Trust B, and has already paid itself commissions for its administration of both Trusts, based on its own applicable commission schedules, as “reasonable compensation” under SCPA 2312 for the requisite period, as follows: (i) as to Trust A, $131,026.51 ($66,585.33 from principal and $64,441.18 from income), and (ii) as to Trust B, $73,783.26 ($36,891.63 from principal and $36,891.63 from income), for aggregate commissions paid $204,809.77.
The court previously allowed petitioner commissions in amounts equal to commissions awardable pursuant to SCPA *569 2309 for the requisite period, to wit: for Trust A, $72,789.01 ($36,868.50 from principal and $35,920.51 from income), and for Trust B, $48,597.26 ($24,298.63 from principal and $24,298.63 from income), for aggregate commissions awarded of $121,386.27.[4]
Petitioner’s Summary Judgment Motion
In its motion for summary judgment seeking dismissal of all seven objections, petitioner submitted the following pertinent information: (1) its respective three commission schedules for the periods in question; (2) an “affidavit” from Daniel Drake, petitioner’s managing director, describing the general nature and breadth of petitioner’s trustee services and its general investment objectives and strategy (Drake affidavit); and (3) an affidavit by John Powers, one of petitioner’s vice-presidents and the managing officer of the Trusts as of February 1993 (Powers Affidavit — I), wherein Powers averred, inter alia, that (i) during the accounting period, Dorothy’s needs were reviewed “several” times, upon which petitioner determined that principal distributions were unwarranted, and (ii) the Trusts received a 20% discount from the applicable commission rates petitioner generally charged, due to petitioner’s investment of the Trusts’ principal “exclusively” in common trust funds.
An examination before trial of Powers and numerous exhibits support objectants’ allegations that, during the accounting period: (i) petitioner had only “sporadic” contact with Dorothy prior to her death, and (ii) petitioner lacked substantive internal records with respect to its administration of the Trusts.
The March 1996 Order
By its March 1996 order, the court dismissed six of the objections, reserving judgment as to the objection to petitioner’s application for SCPA 2312 commissions.
The court further concluded that petitioner’s motion papers did not include sufficient “detailed information” regarding petitioner’s administration of the Trusts, as to allow the court to meaningfully assess petitioner’s entitlement to “reasonable compensation” in light of the criteria set forth in McDonald — I {supra), and invited petitioner to submit such additional proof.
Subsequently, petitioner resubmitted its commission schedules and the Drake affidavit, and provided another affidavit *570 from Powers (Powers Affidavit — II), wherein Powers alleged that petitioner had actively managed those Trusts and consulted with Dorothy regarding investment strategy, tax planning and general trust administration.
The July 1996 Decision
In its July 1996 decision, again relying upon McDonald — I (supra), the court found that petitioner was entitled to “reasonable compensation” equal only to the statutory minimum under SCPA 2312 — the amount of commissions to which an individual trustee would be entitled under SCPA 2309 (see, SCPA 2312 [4] [a]).
In doing so, the court concluded that, despite being given a second opportunity to do so, petitioner had again failed to meet its “burden” of establishing its entitlement to “reasonable compensation” above the statutory minimum under SCPA 2312 (4) (a), stating, inter alia: “[Petitioner has failed not only to adequately describe with particularity, inter alia, the time spent and the nature of the overall services it performed, but also to convince the court that any unusual skill or experience was warranted, or that any significant investment risk was present, during the administration of these trusts.” (Matter of Prankard, NYLJ, July 16, 1996, at 26, col 2, supra.)
The Appellate Division reversed, insofar as appealed from, and remanded the matter for “a hearing on the reasonableness of the petitioner’s application for commissions under SCPA 2312 (2)” (Matter of Prankard, 245 AD2d 566, supra), stating, inter alia: “[Objectants concede] * * * that SCPA 2312 (2) is controlling. However, it is the petitioner’s burden to prove the reasonableness of its application.”
The Hearing
Evidence
At the hearing, petitioner submitted, inter alia, the following documents into evidence: (1) the Bill Jacket for chapter 936 of the Laws of 1984, under which SCPA 2312 was enacted (Bill Jacket); (2) the Memorandum of Senator Jay P. Rolison, Jr. in support of the bill; (3) petitioner’s commission schedules for the accounting period in question; (4) a chart indicating prospective corporate trustee commissions chargeable for the administration of trusts comparable to Trusts A and B by seven New York financial institutions for 1992, compared with those actually charged by petitioner (1992 Corporate Trustee Chart); (5) *571 the entire 955-page record on appeal from the Appellate Division’s remand; (6) an organizational chart of petitioner’s trust administration departments and services (Organizational Chart); (7) a chart indicating prospective costs chargeable by an individual trustee who employed an investment advisor with respect to the administration of trusts comparable to Trusts A and B by 13 New York financial institutions, including petitioner, for 1992 (1992 Individual Trustee/Investment Advisor Chart); and (8) two charts demonstrating the amount of commissions charged with respect to the administration of the Trusts based on petitioner’s investment of principal in common trust funds, as opposed to the prospective costs of an individual trustee’s investment of the comparable principal amounts in standard “no-load” mutual funds, selected to approximate petitioner’s common trust funds (1992 Common Trust Fund/No-Load Mutual Fund Charts).
Testimony
Upon the consent of both parties, the court called former State Senator Jay P. Rolison, Jr. — the sponsor of the bill — as its own witness. Upon review of the Bill Jacket and from personal recollection, Senator Rolison testified: (i) while the Legislature did not define “reasonableness” for the purpose of establishing compensation pursuant to SCPA 2312, in contested cases, the issue of the “reasonableness” of the compensation sought was to be left to the “absolute discretion” of the court to resolve, based on whatever factors it deemed relevant, including, but not limited to, the factors ultimately listed in McDonald — I (supra); (ii) at the time the legislation passed in 1984, the Legislature was aware that other jurisdictions defined “reasonable compensation” in terms of published fee schedules “driven by marketplace conditions within the specific trust industry”; and (iii) however, and most importantly, the Legislature “was not prepared to merely just accept” such schedules where there was an objection, and contemplated that in a contested case, the court should make the ultimate determination, based on any factors it deemed relevant.
He further testified: (iv) the Legislature did not favor permitting the industry to set its own standards of “reasonable” compensation, inasmuch as such a position “would not be in the best interest of the consumer”; and (v) while the legislation was intended to help banks compete with investment advisory firms, which set their own fees and rates within their industry, prospective bank fees comparative to published investment ad *572 visory firm fees were not intended to be tantamount to “reasonable” compensation.[5]
In short, petitioner contended, inter alia, that where, as here, no tangible misfeasance by the corporate fiduciary is alleged, McDonald — I (supra) should be “revisited,” to wit: (i) upon comparison with the published rate schedules of competing institutions in the marketplace, there should be a presumption that the corporate fiduciary’s published rate schedule constitutes “reasonable” compensation per se under SCPA 2312, and (ii) in all contested cases, the burden should be upon the objecting party to establish the “unreasonableness” of the “reasonable compensation” sought.
Applicable Law
History
Corporate Trustee Commissions in New York — Pre-1984
As reported by the Committee on Estate and Trust Administration of the Trusts and Estates Section of the New York State Bar Association in connection with the original version of SCPA 2312 (at 3-6 [footnotes omitted; emphasis in original] [NYSBA Report]):
“The common law rule, which did not grant fiduciaries any compensation for their services, was first overridden in New York in 1817 by a statute [L 1817, ch 251], which * * * authorized the Court of Chancery to ‘make a reasonable allowance to [guardians, executors and administrators] for their services * * * The Legislature subsequently adopted the same rates, but only for executors and administrators * * *
“In 1943, trustees’ compensation was * * * distinguished *573 from the compensation of other fiduciaries [L 1943, ch 694], and several substantial amendments have been made since then.
“The 1943 statutory revisions in trustees’ compensation * * * still applied a set of fixed rates and merely moved in the direction of paying trustees on a current basis, with the total value of their services being measured substantially by the duration of the trust * * *
“In 1966, the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates (the ‘Bennett Commission’) made a comprehensive review of all fiduciary compensation in New York * * *
“The Bennett Commission Report acknowledged that there was at least one significant objection to a reasonable compensation approach; the Report notes that requiring compensation to be fixed by the Surrogate might place ‘too great a burden’ on them, even though other populous states * * * had adopted reasonable compensation without apparent difficulty in this regard.”
Also, Senator Rolison offered these comments as to pre-1984 trustee commissions (Mem of Senator Rolison, 1984 NY Legis Ann, at 318 [emphasis added]):
“Unlike states having reasonable compensation where a trustee can fix commissions according to the market place in an [unregulated] atmosphere, New York corporate trustees must go through a very arduous route to get commissions changed, obtaining not only the approval of at least two Departments of State Government, two Legislative Committees and both Houses of the New York State Legislature, the Governor and the Surrogate’s Court, but also various professional and other associations having diverse, sometimes conflicting, interests * * * Under reasonable compensation however, a corporate trustee is free to set a reasonable compensation, subject to court review on application of a beneficiary interested in the trust.”
Laws of 1984, Chapter 936
Enacted under chapter 936 of the Laws of 1984, SCPA 2312 provides, in pertinent part (emphasis added): “(2) For trusts having a principal value of more than [$400,000] and subject to the provisions of [SCPA 2312 (4)], if the will or lifetime trust *574 instrument does not make provisions for specific rates or amounts of commissions, or, contains only a general reference to commissions allowed by law or words of like import, a corporate trustee shall be entitled to such commissions as may be reasonable, and the court, upon application of a person interested in the trust, may review the reasonableness of the commission of such corporate trustee”
Importantly, as pointed out in McDonald — I (138 Misc 2d, supra, at 579), the Legislature, inter alia, also enacted SCPA 2114, which was not a part of the bill as originally proposed, creating a miscellaneous proceeding under SCPA article 21 to provide for the review of the reasonableness of compensation awarded under SCPA 2312, upon the application of either a trustee or beneficiary.
Notably, the term “reasonable compensation” is not defined in either SCPA 2312 or 2114.
Principles Underlying “Reasonable Compensation”
At the outset of his Memorandum, Senator Rolison characterized “reasonable compensation” as follows (Mem of Senator Rolison, 1984 NY Legis Ann, at 318 [emphasis supplied]): “Generally, reasonable compensation can be characterized as a method of compensating a trustee based upon what is fair and equitable in view of the size of the trust, the responsibilities of the trustee, the character of the work required to be performed by the trustee, the special problems and difficulties met in doing the work, the conduct of the trustee and the knowledge, skill and judgment required of and used by the trustees and the manner and efficiency in which the trust has been administered and the time and service required, together with any other circumstances which may be relevant.“
He also characterized the need for the passage of “reasonable compensation” as “urgent” and “a matter of public interest” in order for corporate trustees to “continue to serve the public” (Mem of Senator Rolison, 1984 NY Legis Ann, at 318).
Beneficiary Objections
As to prospective objections, Rolison described the “experience” of other States — including Florida, Illinois and Connecticut (Mem of Senator Rolison, 1984 NY Legis Ann, at 320): “In *575 [these States], like the practice in New York, a predominant number of accountings — 90 percent or more — are settled by agreement among the beneficiaries, outside of court — a practice which should be continued if New York adopts reasonable compensation when a corporate Trustee is acting.”[6]
Furthermore, the NYSBA Report, which was presented as an “objective overview” of “reasonable compensation” under the original version of the bill (NYSBA Report, at 2), provides, inter alia (at 17-18): “There is a considerable body of case law [in other States] as to the factors a court will consider in reviewing the reasonableness of a trustee’s compensation, including (i) the amount of trust principal and income, (ii) the customary fees in the community, (iii) the performance of the trustee, (iv) any special skill or experience of the trustee, (v) the degree of fidelity, risk and responsibility of the trustee, (vi) the time spent and (vii) the nature of the services performed, whether routine or involving skill and judgment [footnote to Bogert, Trusts § 977 (rev 2d ed, 1983)]. These factors are similar to those considered by New York courts in determining compensation of lawyers. See e.g., Matter of Potts [citation omitted]. In practice* * * fee schedules used by corporate fiduciaries tend to be accepted by the courts as reasonable compensation at least in the absence of objection by beneficiaries.”
Finally, in his Memorandum for the Governor regarding the proposed bill, then Attorney General Robert Abrams wrote (Mem of Atty Gen, Bill Jacket, L 1984, ch 936 [emphasis supplied]): “The bill does not define ‘reasonable compensation.’ Although states with similar statutes have not experienced problems with this approach, New York has traditionally experienced a large volume of estate litigation. Thus, if this bill is approved the situation should be closely monitored. If, in the future, the absence of a definition causes difficulties, the Legislature may have to consider a statutory definition of the term ‘reasonable compensation.’ ”
*576 McDonald — I (supra)
Prior to McDonald — I (supra),'[7] there were no reported cases in New York interpreting and/or applying the “reasonable compensation” standard of SCPA 2312. In fact, unlike the instant case, McDonald — I was an uncontested accounting proceeding in which the Surrogate, sua sponte, reviewed the “reasonableness” of the commissions petitioner charged. In establishing the “12-factor test” in the absence of either a statutory definition or any anticipated “body of case law” in New York to that point, the Surrogate, inter alia (138 Misc 2d, at 579-580): (i) initially noted that “[i]n the absence of a statutory definition * * * reasonableness must be determined by the courts” (at 579); (ii) noted, for comparative purposes only, that the factors to be considered as guidelines in determining the reasonableness of attorney’s fees had been established by the courts in New York under Matter of Freeman (34 NY2d 1) and Matter of Potts (123 Misc 346, affd 213 App Div 59); and (iii) relied upon certain factors enumerated in the case law that had developed in other States which had already adopted a “reasonable compensation” — all of which had been mentioned prominently in the materials supporting the passage of the bill.
Post -McDonald — I and Pre-Prankard Period
Subsequent to McDonald — I (supra), as my distinguished colleague Surrogate Holzman commented in Matter of Hagedorn (NYLJ, Mar. 27, 1991, at 24, cols 1, 2 [Sur Ct, Bronx County]), an uncontested accounting proceeding cited in the July 1996 decision: “The relative lack of litigation under SCPA 2312 indicates that the parties interested in a trust, in accord with the spirit of the statute, have for the most part been able to agree upon the reasonable commissions required by a corporate trustee for it to be profitable without being greedy. Consequently, SCPA 2312 is construed as providing that the court should not question an otherwise unquestioned request for reasonable compensation unless it finds either that an unsophisticated beneficiary has in effect been lulled into a false sense of security by the reputation of the corporate trustee or that there has been a clear misinterpretation of the law.” (Emphasis added.)
Notwithstanding the silence of the courts in its wake, McDonald — I (supra) was not immune to criticism. For *577 instance, in a January 1989 article, the Chairs of the Committee on Litigation in the Surrogate’s Court of the Trusts and Estates Section of the New York State Bar Association criticized three aspects of the decision: (1) the court’s decision to take action sua sponte in an uncontested case; (2) its holding that the “reasonableness” of the compensation depended upon “the singular facts of each trust” and that any corporate trustee had to furnish detailed information about each trust and address the 12 factors enumerated therein; and (3) its reduction of the commission to the amount payable to an individual trustee (see, Gibbs and Ordover, Reasonable Commissions for Corporate Trustees, NYLJ, Jan. 31, 1989, at 3, col l).[8]
The Court’s Findings
Preliminary Observations
Unquestionably, by enacting SCPA 2114 and 2312, the Legislature: (i) recognized the “uniqueness” of corporate trustees in terms of the sophisticated trust administration services they provide, when compared with individual trustees; (ii) intended to address an early 1980’s “slump” in the corporate trustee/banking industry as a matter of “public interest”; (iii) intended to “deregulate” the manner in which corporate trustees could seek compensation, giving credence to the competitive forces of the industry marketplace, so that trust departments would be able to provide more sophisticated fiduciary services at costs commensurate or cheaper than those chargeable when individual trustees have to employ invest *578 ment advisors; and (iv) envisioned that published fee schedules of corporate trustees be deemed, for all practical purposes, “reasonable compensation” in an uncontested corporate trustee/ beneficiary relationship.
Nevertheless, as evident from the legislative materials and Senator Rolison’s testimony, and the language ultimately set forth in SCPA 2114 and 2312, the court concludes, inter alia, that, even in a “contested” context: (i) by “deregulation,” the Legislature did not intend to “abdicate” to the corporate trustee/banking industry unfettered authority to determine its own criteria for self-regulation, without accountability, and (ii) despite its acknowledgment that a competitive “marketplace” would, in practice, define the “reasonableness” of compensation ultimately charged by corporate trustees, the Legislature did not intend corporate trustees’ published fee schedules to be the sole, determinative factor in a “marketplace” analysis.
Standard — Uncontested Proceedings
This court acknowledges that a sua sponte assessment of the “reasonableness” of a corporate fiduciary’s activity pursuant to the McDonald — I “standard” may, under certain circumstances, amount to undue meddling in excess of its power to review accountings, as articulated by the Court of Appeals in Matter of Stortecky v Mazzone (85 NY2d 518, 526 [1995]).
Accordingly, consistent with the Court of Appeals’ admonition in Stortecky (supra) that a Surrogate’s sua sponte review of uncontested accounts be tempered, this court will heretofore follow Surrogate Holzman’s suggestion in Hagedorn (supra), and employ the tenets of McDonald — I (supra) in uncontested accounting proceedings only where it has “legitimate cause” to scrutinize the actions of a corporate trustee seeking compensation pursuant to SCPA 2312.
In this respect, the court alerts corporate trustees which fail to adequately document their fiduciary activities consistent with the McDonald — I factors that they do so at their own peril, if later called upon to substantiate an application for “reasonable compensation” in any accounting proceeding.
Standard — Contested Proceedings
In all contested proceedings, whether or not there is any indication of “misfeasance” by the corporate fiduciary, consistent with the Legislature’s clear intent, this court will continue to apply the factors set forth in McDonald — I (supra) when assessing “reasonable compensation” under SCPA 2312 as a fair *579 and meaningful standard of accountability for corporate trustees.
However, in contrast with McDonald I (supra), henceforth, this court will accord appropriate weight to a corporate fiduciary’s published fee rates within its respective “marketplace" as a significant factor for consideration.[9]
Burden of Proof
The court rejects petitioner’s contention that the applicable “burden” to prove the “unreasonableness” of the compensation sought should be shouldered by the objecting party. That position is not consistent with the Legislature’s express intent in enacting SCPA 2114 and 2312.[10]
Petitioner’s “Reasonable Compensation”
In reviewing petitioner’s proof in support of its application for “reasonable compensation,” applying the factors set forth in McDonald I (supra), and according appropriate weight to petitioner’s published commission rates within its identified “marketplace” as a significant factor, the court renders some initial findings.
Factors Favoring Petitioner’s Position
Initially, with respect to: the size of the trust and the results achieved, given the amounts in question, the positive results achieved, and the propriety of the investment activities ultimately employed, petitioner has established that the circumstances favor enhanced compensation.
Remaining Factors to be Assessed
Secondly, the court considers: petitioner’s responsibilities and the character of the work involved, petitioner’s unusual skill or *580 experience, petitioner’s knowledge, skill and judgment required and used, the manner and promptness in performing its duties, and petitioner’s fidelity. The testimony and exhibits offered at the hearing have significantly embellished petitioner’s original submissions as to the applicability of these factors to the Trusts in question, its internal structure, its administration of trusts in general and, in particular, its administration of its common trust funds.
The court credits petitioner’s decision to manage the assets over the period in question through its all but exclusive use of its common trust funds, given the fact that, in general, common trust funds provide the opportunity for greater diversification and growth, efficient management, and lower administrative costs, while providing increased profitability (see, e.g., Matter of OnBank & Trust Co., 90 NY2d 725, 728). Nevertheless, the court finds that petitioner’s personnel did not maintain contact with Dorothy to tailor its investments to her desired tax needs, to wit: (i) Powers, as managing officer of the Trusts as of February 1993, was unable to articulate, with certainty, the Trusts’ “investment objective,” or whether petitioner had tailored its investment services to Dorothy’s specific needs or requests, and (ii) petitioner did not maintain any documentation with respect to its substantive services to these Trusts. In fact, Powers’ testimony as to the absence of documents showing any tax or income analysis for Dorothy was inconsistent with his previous affidavits.
Finally, as to: the time spent and the amount of risk involved — two factors previously identified by the court as areas where petitioner’s original submissions were deficient — as well as the custom in the community for allowance to trustees/ estimate of petitioner’s value of its services — i.e., the role of petitioner’s commission rate schedules in petitioner’s “marketplace,” petitioner only moderately enhanced its original submissions.
While petitioner admittedly failed to keep contemporaneous time records of its activities, in light of the well-settled principle in counsel fee cases that time spent is, in fact, the least important factor considered by a court in fixing reasonable compensation (see, Matter of Kentana, 170 Misc 663), the court accepts, and credits, petitioner’s proof regarding the customary operation of its common trust funds.
With respect to the Trusts’ lack of exposure to any significant “risk,” the court credits petitioner’s proof as to its investment of the Lord Abbett proceeds “exclusively” in common *581 trust funds — a general approach that proved quite successful, as evidenced by the growth of the Trusts’ principal. Just the same, the court is mindful that the Trusts and the Lord Abbett proceeds were virtually “risk-free” during the requisite accounting period, inasmuch as these proceeds were subject only to the 1987 stock market crash, and, in any event, by the very nature of common trust funds, the proceeds were shielded from the adverse effects of that financial period.
Lastly, while petitioner repeatedly alleged that, during the accounting period, it operated in a self-proclaimed “marketplace,” its presentation of said “marketplace” was limited in substance, scope, chronological value and applicability.
More particularly, other than its strenuous contention that its published commission schedules should be accepted at face value, the court finds that, during its administration, petitioner’s personnel did not maintain the information or records to adequately identify its appropriate “marketplace” to justify full compensation pursuant to its rate schedules.
Conclusion
Considering the extent of petitioner’s proof as to all relevant factors to be considered under the standard pronounced herein, petitioner has shown, to the extent indicated, that it provided specialized fiduciary services over and above those services an individual trustee could have provided to these Trusts, and, therefore, is entitled to “reasonable compensation” above the “minimum” chargeable under SCPA 2312 (see, SCPA 2312 [4] [a]).
Accordingly, having carefully weighed the services provided, petitioner is entitled to $60,000 of the “reasonable compensation” at issue, with the balance of $23,423.50 to be refunded within 45 days from the date of the decree settled herein.[11]
Finally, as suggested in the legislative materials, the court notes that if any additional interpretation or definition of “reasonable compensation” within the context of SCPA 2114 or 2312 is warranted, it can be the subject of prospective review by the Legislature.
[Portions of opinion omitted for purposes of publication.]

. The complete decision has been published in the New York Law Journal (see, Matter of Prankard, NYLJ, Dec. 22, 2000, at 34, col 2).

. See, McDonald — I {supra, at 580): (1) the size of the trust; (2) the responsibility involved; (3) the character of the work involved; (4) the results achieved; (5) the knowledge, skill and judgment required and used; (6) the time and services required; (7) the manner and promptness in performing its duties; (8) any unusual skill or experience of the trustee; (9) the fidelity of the trustee; (10) the amount of risk; (11) the custom in the community for allowance to trustees; and (12) any estimate of the trustee of the value of its services.

. The background for this decision has been set forth at length in the court’s decision and order of March 11, 1996 (Matter of Prankard, NYLJ, Mar. 21, 1996, at 31, col 4 [March 1996 Order], affd 241 AD2d 525), and its decision of July 9, 1996 (July 1996 Decision) (Matter of Prankard, NYLJ, July 16, 1996, at 25, col 6, read and remanded for hearing 245 AD2d 566).

. In essence, the difference of $83,423.50 between the amount petitioner paid itself and the amount the court originally awarded is the monetary sum at issue.

. Petitioner also presented testimony from: (i) a representative of the New York Bankers Association, which sponsors legislation effecting the State’s banking industry, as to his opinion of the Legislature’s intent in enacting SCPA 2312; (ii) Powers, who testified, in general terms, as to petitioner’s administration of the Trusts during his tenure as managing officer consistent with his statements in the Powers Affidavit — II, and, more specifically, that, as shown by the documentary evidence submitted (i.e., the Organizational Chart, the 1992 Corporate Trustee Chart, the 1992 Individual Trustee/Investment Advisor Chart, and the 1992 Common Trust Fund/ No-Load Mutual Fund Charts), petitioner’s rates were within the “mainstream” of those charged by its “competitors”; and (iii) Charles Phillips, a member of petitioner’s Trust and Investment and Common Trust Fund Committees, who testified extensively as to petitioner’s management of assets in its common trust funds.

. The court also quoted extensively from other documents in the Bill Jacket, including: (i) a report prepared by the Committees on Trusts, Estates and Surrogate’s Courts and State Legislation of the Association of the Bar of the City of New York, as to the failure of the then current system to account for differences in work performed in different areas of New York State, and (ii) letters from major New York banking institutions to the Governor’s Counsel urging passage of the bill, most of which cited its “deregulatory” effect as of utmost importance to the banking and trust industries at that time.

. Petitioner’s motion for “a reconsideration” of McDonald — I (supra) was denied (Matter of McDonald, 140 Misc 2d 49 [McDonald — II\).

. Indeed, after warning that application of the 12 “Freeman and Potts” factors routinely used in determining reasonable counsel fees was inappropriate in assessing “reasonable compensation” under SCPA 2312, given “the differences in the nature and operation between banks and law firms,” the authors suggested:
“[T]he court should require a submission by the bank: (1) describing the ways and means by which the bank manages trusts and conducts its investment, custodial, accounting, tax and other fiduciary services; (2) stating whether the trust under review received these standard services; (3) describing the skill, education and experience of its trust personnel who contributed, or may have contributed, to the management of the trust under review; (4) describing any limitations on the scope of the normal responsibilities of trustees; (5) stating the size of the trust, and (6) * * * describing any unusual circumstances regarding the nature of the work involved and the results.
“In addition, the court should give prominent consideration to the cost of services in the marketplace that are similar to the services customarily rendered and take judicial notice that banks provide more services and have a higher standard of responsibility.” (Gibbs and Ordover, op cit., at 4, cols 5-6.)

. This is especially so since much has changed in the financial services industry since 1984, as exemplified in the modernization of Federal banking laws pursuant to the enactment, in November 1999, of the Gramm-Leach-Bliley Financial Services Modernization Act (Pub L 106-102, 113 US Stat 1338 [1999]), which is expected to “breakdown the barriers that have separated our banking, securities and insurance industries and placed our companies in those industries at a competitive disadvantage with their international counterparts" (Mitchell, Financial Modernization—At Last, NYLJ, Nov. 17, 1999, at 3, col 1; see also, Rader and Kim, The Implications of the Repeal of Glass-Steagall, NYLJ, Feb. 8, 2000, at 1, col 1).

. In any event, the issue has been settled by the Appellate Division, Second Department, which, in remanding this matter for a hearing, specifically stated that petitioner had the “burden to prove the reasonableness of its application” (Matter of Prankard, 245 AD2d 566, supra).

. Additionally, as directed by the Appellate Division (Matter of Prankard, 245 AD2d 566, supra), reimbursement must include an award of interest, at the statutory rate of 9% per annum (CPLR 5004), calculated in accordance with the Appellate Division’s directives (see, Matter of Smathers, 4 AD2d 784).