OPINION OF THE COURT
Eugene E. Peckham, S.
This is a petition by Donna E. Allen, as guardian of her son, Derek W. Bryant, to invest $25,000 of the ward’s funds pursuant to an investment advisory agreement, which is now permitted by SCPA 1708 (2) (c), subject to the Court’s approval. (L 2000, ch 43, § 1.) The proposed agreement is with Manufacturers & Traders Trust Co. (hereinafter M&T Bank or M&T). Derek was born on September 3, 1986 and thus will be 15 in a few months.
The agreement is a printed form supplied by M&T and basically provides that the guardian delegates to M&T the investment responsibility for the ward’s assets to be managed in accordance with the Prudent Investor Rule of EPTL 11-2.3. The guardian selects from essentially three asset allocation models: aggressive, moderate and conservative. There are also tax sensitive versions of the same three models. Based on the model selected, M&T picks a diversified portfolio of investments using various mutual funds. M&T as investment advisor will periodically reallocate the percentage of funds in the portfolio and also change the mutual funds in the portfolio. The mutual fund selections include the Vision Group of Funds Inc. for which M&T is the advisor, as well as third-party funds such as Janus and Vanguard.
M&T has submitted information indicating that this is a state-wide investment advisory program for guardians. As of April 16, 2001, there were 121 accounts in 10 counties upstate with 106 accounts approved and open and 15 petitions pending for court approval. Thus M&T intends to secure multiple accounts and invest them as a unit in the types of portfolios selected by the guardians of the various accounts. This permits combining a number of small guardianship accounts together for investment purposes thus achieving economies of scale for the program.
Ordinarily, it is not the province of the court to prejudge the decisions of a fiduciary regarding investments. However, SCPA *464 1708 (2) (c) provides that the guardian must be authorized by the court to enter into the investment advisory agreement and the arrangement must be “acceptable to the court.” Furthermore the jurisdiction of the court over the property of infants is “unlimited * * * over any and every legal and equitable question which may ever arise in connection with * * * the relations of guardians and wards.” (Matter of Morris, 134 Misc 374, 382 [Sur Ct, Kings County 1929]; SCPA 1701.) As a result, it is clear that the Legislature has committed to the Surrogate Court the responsibility and jurisdiction to review the guardian’s proposed investment delegation to be sure it is reasonable and in the best interests of the ward.
Originally the agreement proposed that M&T receive a fee of 1.25% of the first $100,000 of assets and 1.0% on assets over $100,000 with a minimum fee of $250 per quarter. In addition, the agreement requires the guardian to agree to the fact that M&T and/or its affiliates will receive additional fees for acting as advisor to the Vision Mutual Funds ranging from .79% to 1.14%. For handling the third-party funds, M&T will receive an administrative service fee of .25%. After a conference with the Court where it was pointed out that because of the minimum fee the total compensation would be 4% of the $25,000 invested, M&T agreed to reduce the minimum to $75 per quarter. As a result, M&T’s total compensation on funds invested in the Vision Mutual Funds would range from 2.04% to 2.39% and on third-party funds it would be 1.50%.
The purpose for permitting guardians to enter into investment advisory agreements is set forth in the legislative memorandum as follows:
“[T]o authorize the guardian of infants’ funds to invest those funds in accordance with the Prudent Investor Act (EPTL 11-2.3) without subjecting the infant’s funds to the cost of a bond.
“The return to be gotten from depositing the funds in a savings account or government debt or security may be significantly lower than that achievable by investing the funds in stocks, corporate bonds, mutual funds or other investment vehicles available to investors generally. Particularly where the funds will be under the guardian’s control for a number of years, the infant will not be well served by simply depositing the funds in a bank account, upon which the interest earned may not even protect the corpus from the effects of inflation.” (Mem of Assembly in Support of L 2000, ch 43, 2000 McKinney’s Session Laws of NY, at 1485-1486.)
Thus the legislation is intended to achieve the laudable purpose of giving guardians the opportunity to invest through *465 an investment advisor to achieve a higher return at reduced cost. M&T is attempting to make its investment advisory service and the expanded investment opportunities available to a large number of guardianship accounts with relatively small assets, which is also a very worthwhile purpose.
It is clear that SCPA 1708 (2) (c) and EPTL 11-2.3 are congruent sections and should be read together. They both provide a method for a fiduciary to delegate investment responsibility to an experienced investment advisor. The SCPA section says “The investment advisory agreement shall provide that the guardianship funds will be invested in accordance with the provisions of section 11-2.3.” The legislative memorandum of support for the amendment to section 1708 explains further that the agreement “must provide that the investment advisor will invest the funds in accordance with the Prudent Investor Act and agree to be hound by its provisions.” (Mem of Assembly, at 1486 [emphasis added].)
SCPA 1708 (2) (c) does not contain any provision regarding the fees to be paid to the investment advisor. The legislative memorandum does state that “the prudent investor rate will allow reasonable investment advisory fees to be paid from the fund.” (Mem of Assembly, at 1486.) The general rule is that commissions and fees paid to fiduciaries are within the discretion of the Surrogate. (Turano and Radigan, New York Estate Administration § 15-5, at 542 [2001 ed].) In the Prudent Investor Act the determination of fees for the investment advisor is specifically subject to review by the court pursuant to SCPA 2115. Thus it is left to the court to determine what is reasonable compensation for the investment advisor. (Matter of McDonald, 138 Misc 2d 577, reconsideration denied 140 Misc 2d 49 [Sur Ct, Westchester County 1988]; Matter of Prankard, 187 Misc 2d 566 [Sur Ct, Westchester County 2000].)
Reasonable compensation was first permitted for fiduciaries in New York when the Legislature adopted SCPA 2312, which authorizes corporate trustees to receive reasonable compensation for trusts of more than $400,000. Neither section 2312 nor section 1708 (2) (c) contains any guidelines as to what constitutes reasonable compensation.
Again a legislative memorandum, which is quoted in Warren’s Heaton, fills the gap.
“Generally, reasonable compensation can be characterized as a method of compensating a trustee based upon what is fair and equitable in view of the size of the trust, the responsibilities of the *466 trustee, the character of the work required to be performed by the trustee, the special problems and difficulties met in doing the work, the conduct of the trustee and the knowledge, skill and judgment required of and used by the trustees and the manner and efficiency in which the trust has been administered and the time and service required, together with any other circumstances which may be relevant.” (7 Warren’s Heaton, Surrogates’ Courts § 103.05 [3] [b] [i], at 103-287, quoting Mem of Senator Rolison, 1984 NY Legis Ann, at 318; see also Matter of McDonald, supra; Matter of Freeman, 34 NY2d 1 [1974].)
As an investment advisor M&T does not assume the full responsibilities of the guardian. The guardian retains ultimate responsibility for overseeing the investment delegation and in addition managing the balance of the infant’s funds, paying bills and acting as guardian of the person of the infant. While it is true that M&T has a significant problem in keeping separate track of the numerous small guardianship accounts in its program, it can be done with a computer. It would also seem that selecting a portfolio of mutual funds, particularly where many of them are already advised by M&T, does not require the same degree of labor by investment analysts as would be true for a portfolio of individual issues of stocks and bonds. Again there are many computer programs available to assist in the task.
The only evidence submitted in support of requested fees, other than the fee schedule attached to the agreement, is a schedule of comparative fees charged by other investment advisory firms prepared by M&T. The fees shown range from 1.0% to 2.0% with sliding scales based on the size of the account. The highest charge by an investment firm for a $25,000 account would be $500 and the lowest $375 and for a $100,000 account would be $2,000 and the lowest $1,250. SCPA 2312 establishes a fee for corporate trustees of 1.235% up to $400,000 of assets which would be $308.75 on a $25,000 account and $1,235 on a $100,000 account. No other evidence as to any of the other factors outlined in the legislative memorandum above that should be considered in determining reasonable compensation was presented. Based upon the comparative fee schedules presented by M&T and the statutory fees in SCPA 2312, the M&T fees are at the bottom of the range charged by investment advisory firms.
*467 However, the reasonableness of compensation is not decided by fee schedules alone, but rather by the Surrogate on the factors set forth in Matter of McDonald (supra), and the legislative memorandum. (Matter of Prankard, supra.) As previously stated, the duties of an investment advisor are more limited than those of a regular fiduciary, and therefore should entail lower compensation. On an annual basis, the proposed M&T fees are slightly higher than those of a trustee on the first $100,000 and less on amounts over that amount. Guardians, on the other hand, are paid paying and receiving commissions pursuant to SCPA 2307, which can be higher or lower than a trustee’s annual commissions depending on the size of the fund and the length of time the guardianship continues. Frequently the guardian is the parent of the infant or mentally retarded person and agrees to serve without compensation. In such situation, the only charge would be the investment advisor’s fees. Without more information regarding the work required of an investment advisor as related to the McDonald factors, it is impossible to decide whether or not the proposed fees are reasonable. Based solely on the information submitted they may be in the reasonable range.
Nevertheless, the investment advisor agreement as presented cannot be approved because there is a fatal flaw relating to the proposed fees. As previously stated the investment advisor agreements are subject to the Prudent Investor Rule of EPTL 11-2.3, section 11-2.3 (d) authorizes trustees to invest in mutual funds for which it or an affiliate acts as investment advisor. But that section also requires the trustee to choose between receiving advisor fees from the mutual fund or the trustee’s commissions for the portion of the trust invested in such mutual funds. Because SCPA 1708 (2) (c) is subject to the rules of EPTL 11-2.3 the provisions of subdivision (d) also apply to the investment advisor agreement. M&T cannot both charge the investment advisor fee and also receive compensation from the Vision Mutual Funds. It must elect which fees to take and which to forego.
As to the third-party funds, according to the information submitted, the funds themselves charge fees ranging from .62% to 1.68% and M&T receives a service fee of .25% in addition to its investment advisory fees of 1.25% and 1.0%. It is equally unfair for the infant’s funds to be charged twice for investment advice, once by the third-party mutual fund and again by M&T. While we recognize there is work and skill involved in selecting the mutual funds to include in the respective portfolios for *468 which reasonable compensation should be allowed, the total fees cannot be excessive. Adding M&T’s fees to those of the third-party funds produces total charges of 2.12% to 3.18%. This is higher than allowed by SCPA 2312 and must be moderated. Since the third-party funds undoubtedly will not change their charges M&T should be limited to its .25% service fee or the difference between the third-party fund charge and 1.25% whichever is greater.
Another troubling feature of the proposed agreement regarding fees is that it provides that M&T can change its fee schedule at any time on 30 days’ notice. Elsewhere the agreement also provides that it can only be changed by written agreement signed by the guardian and M&T and approved by the Court. Any change in the fee schedule must also be subject to court approval, otherwise the court’s decision as to the reasonableness of the investment advisory fees could be circumvented.
Thus the Court holds that the investment advisor agreement is disapproved because the proposed fees to the investment advisor as presented are excessive.
There is also a second reason why the proposed agreement cannot be approved. The Bryant guardianship account contains $45,236.26 as of December 31, 2000 according to the last annual report filed. It is proposed to invest $25,000 of this in the M&T mutual fund program. Derek is 15 and the guardianship will terminate in three years.
Research has established that over the long term stocks produce a higher rate of return than bonds and bank accounts, but with greater risk and volatility. Furthermore, the longer the term of the investment the greater the likelihood that stocks will outperform bonds and bank accounts. (Wolf, Defeating the Duty to Disappoint Equally — The Total Return Trust, 32 Real Prop Prob & Tr J 45, 58-59 [Spring 1997]; Levy, The Total Return Unitrust: Is it Time for High-Fives?, Tr & Est, at 47 [June 2000]; see also 5th Report of EPTL-SCPA Legis Advisory Comm [May 11, 1999].)
The general conclusion to be drawn from these various reports is that a three-year term is too short a time for the higher returns produced by stocks to be effective. For example, the Wolf article indicates that stocks outperform bonds 57% of the time over a one-year period, but 74% over a five-year period and 77% over a 10-year period. (Wolf, supra at 58.) Likewise the S&P 500 outperforms long-term Treasury bonds by about 5% over a 10-year period, but by a much smaller amount in the short term and with far greater risk of loss. *469 (Wolf, supra at 58, 102.) In a one-year period blue chip stocks have declined as much as 40% but over a 20-year period they have always produced positive returns. (Wolf, supra at 58.)
The relatively small size of this account and the short term means the risk of loss from investing in mutual funds that invest in the stock market is too great and therefore not in the best interests of the young man who is the beneficiary of the account. Over the short three years remaining, the account should remain in an insured bank account subject to joint control, where the risk of loss is virtually nonexistent.
The Court is also concerned by paragraph 13D of the agreement which, referring to the guardian, reads as follows: “I have received and read the prospectus for each of the mutual funds in the asset allocation model selected for the Account and agree to the terms contained therein.” One purpose for a delegation of the investment function is to shift the responsibility for investment selections and decisions to the delegee. EPTL 11-2.3 (c) (2) to which SCPA 1708 (2) (c) subjects the investment advisory agreement says: “The delegee has a duty * * * to exercise the delegated function with reasonable care, skill and caution. An attempted exoneration of the delegee from liability for failure to meet such duty is contrary to public policy and void.” If the provision of the agreement stating that the guardian has read and agreed to the prospectuses of the mutual funds is an attempt to shift the responsibility for investment decisions back to the guardian and exonerate M&T from liability for its investment responsibility, then that provision of the agreement is void and should be removed from the agreement.
The petition of Donna E. Allen, as guardian, for permission to enter into an investment advisory agreement with M&T Bank is denied for the reasons stated. Nevertheless, in appropriate circumstances and on a different fact situation the provisions for guardians to enter into investment advisory agreements are an excellent device which should be widely used.